U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

NOV 2 0 2013

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 13-00309-01 |
| | * | |
| | * | 18 U.S.C. § 1347 |
| | * | 18 U.S.C. § 1343 |
| VS. | * | 18 U.S.C. § 1028A |
| | * | 18 U.S.C. § 982(a)(7) |
| | * | |
| | * | JUDGE STAGG |
| SHARON MONROE | * | MAGISTRATE JUDGE HORNSBY |

### INDICTMENT

**THE GRAND JURY CHARGES:**

AT ALL TIMES MATERIAL HEREIN

### COUNTS 1-3
(Health Care Fraud, 18 U.S.C. § 1347)

A.  BACKGROUND

#### The Medicare Program

1.  The Medicare program is a federal health insurance program that provides coverage for people sixty-five years of age or older, for certain disabled people, and for some people with end-stage renal disease. Medicare pays for services and items that are considered medically reasonable and necessary for the treatment and/or diagnosis of a patient who is either ill or injured. Medicare is administered by the Centers for Medicare and Medicaid Services (CMS), which is part of the United States Department of Health and Human Services.

2. At all pertinent times, Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. The Medicare program includes coverage under two primary components: Medicare Part A covers in-patient hospital care, skilled nursing facility services, hospice care, and partial hospitalization program care. Medicare Part B covers medically necessary physicians' services, outpatient hospital services, durable medical equipment, medical health services, and supplies.

## Medicare Part A Outpatient Coverage

4. One of the programs covered under Medicare Part A is Outpatient Psychiatric Care Coverage (OPCC). OPCC is a Part B service paid by the Part A contractor. Such coverage must be associated with an Outpatient Hospital department. Claims are paid a per diem amount based on an ambulatory payment classification (APC). These types of programs are often called Intensive Outpatient Programs (IOP) by the provider community.

5. According to the Medicare Benefit Policy Manual (MBPM) Chapter 6, Section 70.1A, services provided by an IOP must have an individualized treatment plan, physician supervision and evaluation, and a reasonable expectation of improvement.

6. MBPM Chapter 6, Section 70.1A1 requires that services provided according to an individualized treatment plan must be prescribed by a physician. More specifically, the individualized written plan of treatment is established by a physician. The plan must state the type, amount, frequency, and duration of the services to be furnished. The plan must also indicate the diagnoses and anticipated goals.

7. MBPM Chapter 6, Section 70.1A2 requires that services must be supervised and periodically evaluated by a physician. There should be periodic consultations and conferences with therapists and staff to review medical records, and patient interviews. Physician entries in medical records must support this involvement. The physician must also provide supervision and direction to any therapist involved in the patient's treatment and see the patient periodically to evaluate the course of treatment and to determine the extent to which treatment goals are being realized and whether changes in direction or emphasis are needed.

8. MBPM Chapter 6, Section 70.1A3 requires that services to be provided must offer a reasonable expectation for improvement in the patient's condition. The treatment must, at a minimum, be designed to reduce or control the patient's psychiatric symptoms to prevent relapse or hospitalization and improve or maintain the patient's level of functioning.

## Medicare Part B Psychotherapy Coverage

9. Medicare Part B contains provider requirements for psychological and psychotherapy services. One such requirement is the 'incident to' provision. For a mid-level practitioner to perform services 'incident to' a physician's services there must be direct supervision. Direct supervision means the supervising practitioner must be on the premises and immediately available to provide assistance and direction the entire time the mid-level practitioner is performing services. Under the 'incident to' provision, individuals must be licensed or authorized by state law to perform diagnostic and/or therapeutic psychological services. Mid-level practitioners include, but are not limited to

3

doctorate or master level psychologists, master's level social workers, nurse practitioners, clinical nurse specialists, physician assistants, and any other psychotherapist licensed by the state to perform psychotherapy. Individuals who do not meet this requirement may not provide psychological services under the 'incident to' provision.

10. Under Part B, psychotherapy is defined as treatment for mental illness and behavior disturbances. Approved mental health personnel establish a professional contract with the patient and through definitive therapeutic communication, attempt to alleviate the emotional disturbances, reverse or change maladaptive patterns of behavior and encourage personality growth and development. It is not expected to be a frequent or ongoing service, but may need to be repeated at reasonable intervals to aid the individual, the family, and the staff in managing the manifestations of the patient's mental illness.

The records for psychotherapy must contain the following information:

i. The time spent in the psychotherapy sessions.

ii. Documentation of the patient's capacity to participate in and benefit from psychotherapy.

iii. When more than 20 sessions, per episode of illness, are performed, the records must include documentation supporting the need for continued treatment.

iv. Documentation that cognitive skills, such as behavior modification, supportive interactions, and discussion of reality were applied to produce therapeutic change. Documentation must state what specific techniques or strategies are used, the expected outcomes and the patient's response to therapy.

4

11. Under Medicare, the Current Procedural Terminology (CPT) Code that is used to bill Medicare for Part B Individual Psychotherapy services is 90808. The provider that uses CPT code 90808 to bill Medicare for psychotherapy services must document in the patient's medical files the medical necessity for the psychotherapy services.

### Monroe Medical Management

12. SHARON MONROE is a resident of Caddo Parish, Louisiana.

13. Monroe Medical Management, L.L.C., (MMM), is an entity located in Caddo Parish, Louisiana that was in the business of providing health care services and billing services for health care providers.

14. SHARON MONROE has been the owner and operator of MMM since March 28, 2005.

15. From 2005 to 2011, SHARON MONROE, through MMM, operated Intensive Outpatient Programs which purportedly provided services at apartment complexes in the Shreveport/Bossier City, Louisiana area, including, but not limited to: (1) Galilee Majestic Arms; (2) Galilee Eden Gardens; and (3) Canaan Towers (hereinafter apartment complexes).

16. SHARON MONROE employed individuals who visited the apartment complexes as part of the Intensive Outpatient Programs. During the visits, the employees predominantly organized and conducted recreational activities and discussed religious and current events with the residents. The employees completed paperwork that summarized the services they performed during their visits at the apartment complexes. SHARON MONROE supervised and directed the activities of her employees and

maintained the employees' paperwork pertaining to their visits at the apartment complexes. The aforementioned activities the employees performed during their visits at the apartment complexes were not reimbursable as psychotherapy or psychiatric Intensive Outpatient Program services under Medicare.

17. SHARON MONROE listed local physicians L.D., A.I., and K.C. (hereinafter the physicians) as medical directors for the Intensive Outpatient Programs she operated at the apartment complexes so that she could use the physicians' unique Medicare Provider Number to electronically submit fraudulent claims for the services her employees purportedly rendered at the apartment complexes.

18. SHARON MONROE used the unique Medicare Provider Number for Lafayette Community Rehabilitation Hospital (hereinafter LCRH) located in Lafayette, Louisiana to electronically submit fraudulent claims for services her employees purportedly rendered at the apartment complexes in the Shreveport/Bossier City area. SHARON MONROE falsely listed L.D. as the associated physician for the bills SHARON MONROE submitted to Medicare under the LCRH Medicare Provider Number.

19. The physicians executed a reassignment of benefits form whereby payments for Part B psychotherapy services billed to Medicare would be directly deposited into accounts owned and operated by SHARON MONROE.

20. Neither SHARON MONROE nor her employees provided Medicare approved psychotherapy services to the residents at the apartment complexes.

21. SHARON MONROE knowingly and intentionally submitted claims to

6

Medicare for services her employees purportedly rendered at the apartment complexes using CPT codes that denote psychotherapy services under Medicare Part B, when in truth and fact, the services SHARON MONROE's employees purportedly provided under the aforementioned Intensive Outpatient Programs SHARON MONROE operated at the apartment complexes did not include Medicare approved psychotherapy services under Medicare Part B.

B. SCHEME TO DEFRAUD

22. From on or about 2007, and continuing to on or about 2011 the defendant, SHARON MONROE, devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money from Medicare by means of materially false and fraudulent pretenses, representations, and promises.

C. MANNER AND MEANS OF SCHEME

23. It was part of the scheme to defraud that the defendant, SHARON MONROE, knowingly submitted claims to Medicare for Part B psychotherapy services that were not rendered or performed.

24. It further was part of the scheme to defraud that the defendant, SHARON MONROE, used physicians L.D, I.A., and K.C.'s Medicare Provider Numbers to submit claims to Medicare for Part B psychotherapy services without their knowledge, permission, or consent.

25. It was further part of the scheme to defraud that the defendant, SHARON MONROE, submitted claims to Medicare for Part B psychotherapy services that were not rendered incident to a qualifying physician.

26. It was further part of the scheme to defraud that the defendant, SHARON MONROE, submitted some claims to Medicare for Part B psychotherapy services wherein her employees purportedly rendered psychotherapy services that were in excess of 24 hours per day.

27. It was further part of the scheme to defraud that the defendant, SHARON MONROE, submitted claims to Medicare for Part B psychotherapy services that were purportedly rendered and performed by qualified personnel, when in truth and fact, such personnel were not qualified to render and perform Part B psychotherapy services.

28. It was further part of the scheme to the defraud that the defendant, SHARON MONROE, submitted claims to Medicare for Part B psychotherapy services wherein the defendant, SHARON MONROE, represented such services were rendered and performed at medical offices, when in truth and fact, the defendant, SHARON MONROE, knew that such services were not rendered and performed at medical offices.

29. It was further part of the scheme to defraud that SHARON MONROE, submitted claims related to Medicare for Part B psychotherapy services in the amount of not less than $6,000,000.00. As a result, SHARON MONROE received not less than $2,000,000.00 in payment from Medicare to which she was not entitled.

D. THE OFFENSE

30. On or about the dates set forth below, in the Western District of Louisiana and elsewhere, the defendant, SHARON MONROE, as the owner and operator of MMM, did knowingly and willfully execute and attempt to execute the aforementioned scheme to defraud a health care benefit program, to wit: Medicare, and to obtain by means of

8

materially false and fraudulent pretenses, representations and promises, money owned by and under the custody and control of said health care benefit program, in connection with the delivery of a payment for health care benefits, items or services:

| COUNT | Procedure Code | Approximate Claim Submission Date | Amount Billed | Claim Number |
|---|---|---|---|---|
| 1 | 90808 | March 6, 2009 | $141.87 | 531109065387070 |
| 2 | 90808 | February 7, 2009 | $141.87 | 531109058174052 |
| 3 | 90808 | March 9, 2009 | $141.87 | 531109068342070 |

All in violation of Title 18, United States Code, Section 1347. [18 U.S.C. § 1347].

## COUNTS 4-13
## (Wire Fraud, 18 U.S.C. § 1343)

The allegations in Counts 1-3 are incorporated and alleged as though fully set forth herein.

On or about the dates listed below in the Western District of Louisiana, the defendant, SHARON MONROE, for the purposes of executing the aforesaid scheme to obtain money by false and fraudulent pretenses, representations, and promises, caused to be transmitted by means of wire communication in interstate commerce the writings, signs, signals and sounds described below for each count, each transmission constituting a separate count.

| COUNT | Beneficiary Initials | Services Billed | Approximate Claim Submission Date | Amount Billed | Claim Number |
|---|---|---|---|---|---|
| 4 | L.S. | Procedure Code 90808 Psytx, Office, 75-80 Min | March 6, 2009 | $141.87 | 531109065387070 |
| 5 | M.M. | Procedure Code 90808 Psytx, Office, 75-80 Min | February 7, 2009 | $141.87 | 531109058174052 |
| 6 | C.B. | Procedure Code 90808 Psytx, Office, 75-80 Min | March 9, 2009 | $141.87 | 531109068342070 |
| 7 | C.W. | Procedure Code 90808 Psytx, Office 75-80 minutes | June 30, 2010 | $141.87 | 531110181316080 |
| 8 | C.W. | Procedure Code 90808 Psytx, Office 75-80 minutes | June 11, 2010 | $141.87 | 531110162274600 |
| 9 | C.W. | Procedure Code 90808 Psytx, Office 75-80 minutes | June 23, 2010 | $141.87 | 531110174416540 |
| 10 | C.W. | Procedure Code 90808 Psytx, Office 75-80 minutes | June 25, 2010 | $141.87 | 531110176138670 |
| 11 | D.B. | Procedure Code 90808 Psytx, Office 75-80 minutes | March 18, 2009 | $141.87 | 531109077315542 |
| 12 | D.B. | Procedure Code 90808 Psytx, Office 75-80 minutes | March 18, 2009 | $141.87 | 531109077315544 |
| 13 | J.B. | Procedure Code 90808 Psytx, Office 75-80 minutes | March 18, 2009 | $141.87 | 531109077315594 |

All in violation of Title 18 United States Code, Section 1343. [18 U.S.C. § 1343].

## COUNT 14
### (Aggravated Identity Theft, 18 U.S.C. § 1028A)

1. The allegations of Count 1 are realleged and incorporated by reference as though set forth in full herein.

2. On or about June 30, 2010, in the Western District of Louisiana, the defendant, SHARON MONROE, did knowingly transfer, possess and use and caused to

10

be used, without lawful authority, a means of identification of another person during and in relation to an enumerated felony, that is, wire fraud alleged in Count 7, in violation of Title 18, United States Code, Section 1343, in that the defendant did use and caused to be used the name and a means of identification of another person to defraud Medicare.

All in violation of Title 18, United States Code, Section 1028A. [18 U.S.C. § 1028A].

## NOTICE OF FORFEITURE
### (18 U.S.C. § 982(a)(7))

A. The allegations contained Counts 1-3 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

B. As a result of committing violations under 18 U.S.C. § 1347, the defendant, SHARON MONROE, shall forfeit to the United States of America pursuant to 18 U.S.C. § 982(a)(7) any property, real or personal, that constitutes or is derived, directly or indirectly, as the result of such violations. The property includes, but is not limited to, at least $2,099,412.17 and all interest and proceeds traceable thereto, in that such sum in aggregate is property constituting, or derived from, proceeds obtained directly or indirectly, as result of the commission of the aforementioned offenses under 18 U.S.C. § 1347.

C. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to Title 21, United States Code, Section 853(p), to seek to forfeit any other property of the defendant up to the value of the property subject to forfeiture.

TRUE BILL:

*REDACTED*

STEPHANIE FINLEY
United States Attorney

EARL M. CAMPBELL
Assistant United States Attorney
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101
(318) 676-3600

12